IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DENNIS A. GIVENS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 5:12-cv-145

SCOTT R. SMITH, et al.,

    Defendants.

**REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED & ORDER ON PENDING NON-DISPOSITIVE MOTIONS**

*I. INTRODUCTION*

A complete history of this case is detailed in the Memorandum Opinion and Order issued by Judge Stamp on July 1, 2013.[1] As a result of that Order, all but one of the eleven original Defendants were dismissed from the case. Only Defendant Weaver remains as a Defendant. Currently, there are several motions pending before the Court.

*II. DISCUSSION*

*A. Plaintiff's Motion for Judicial Notice of Objections and Evidence in USDC Case Nos. 5:12-cv-149 and 5:12-cv-155 (Doc. 177)*

In his motion, Plaintiff asks the Court to take judicial notice of the multitude of pleadings and filings in Greg Givens's and Carol Pizzuto's cases in deciding whether to grant summary judgment. The Court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts

---

[1] Dkt. No. 103.

that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989). Likewise, the Court will not ferret through the record in other cases looking for evidence of a factual dispute. As it has done throughout this case, the Court will continue to grant the *pro se* Plaintiff as much deference as possible in interpreting and analyzing his often cryptic memoranda. However, for the above stated reasons, Plaintiff's Motion to Take Judicial Notice of Objections and Evidence in USDC Case Nos. 5:12-cv-149 and 5:12-cv-155 is **DENIED**.

## B. Plaintiff's Recusal Motion

On May 30, 2014, Plaintiff filed a motion seeking to disqualify the undersigned from hearing matters in this case and to vacate all orders issued by the undersigned in this case. The undersigned support of recusal is that an attorney from the undersigned's former law firm represented Plaintiff in a social security matter and that during that time, the undersigned discussed political affiliations and charitable fundraising with Plaintiff and Greg Givens. Additionally, Plaintiff claims that Greg Givens played golf with the undersigned and the undersigned's spouse. Plaintiff's allegations regarding knowing the undersigned socially are unsupported and meritless. Moreover, although it appears from Plaintiff's exhibits that the undersigned was a member of the same law firm as Plaintiff's social security attorney in 1999, the undersigned did not represent Plaintiff in that matter, or any other matter, and particularly not any matter that is in any way related to this case. Accordingly, for these reasons, as well as the reasons set forth in the undersigned's orders of November 2, 2012 and December 17, 2012, Plaintiff's Motion for Recusal is again **DENIED**.

## C. Defendant's Motion for Summary Judgment and Plaintiff's Motions for Additional Time to Respond

1. Plaintiff's Motion for Additional Time to Complete Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 179)

Defendant electronically filed a Motion for Summary Judgment and a Memorandum in Support on May 1, 2014.[2] In the attached certificates of service, Defendant averred that, on May 2, 2014, he would serve copies of the motion and the memorandum on Defendant via certified mail. However, due to an oversight by counsel, the documents were not prepared in time to be sent via certified mail on May 2, 2014, so Defendant sent the documents to Plaintiff via Federal Express and filed an amended certificate of service reflecting this change.[3] Although Defendant sent the documents on May 2, 2014, which was a Friday, Plaintiff did not receive the documents until Monday, May 5, 2014.[4] Also on May 2, 2014, the undersigned issued a *Roseboro* Notice informing Plaintiff of his right to file responsive material and alerting him to the fact that a failure to so respond might result in an order of summary judgment against him.[5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). The Notice also directed Plaintiff to file any responsive material within 21 days of the date of the *Roseboro* Notice.[6] Plaintiff received the Roseboro Notice on Saturday, May 3, 2014.[7] Thus, Plaintiff received the *Roseboro* Notice informing him of his rights and responsibilities regarding Defendant's Summary Judgment Motion *before* he actually received the Summary Judgment Motion.

Rather than seek clarification or request an extension of time in which to file his response,

---

[2]Dkt. Nos. 172 & 173.

[3]Dkt. No. 175.

[4]Dkt. No. 181-1.

[5]Dkt. No. 174.

[6]Although the Court directs *pro se* Plaintiffs to file responsive material within 21 days of the date of the *Roseboro* Notice, responses are actually due within 21 days of the date of service of the summary judgment motion. L.R.Civ.P. 7.02(b). However, because the *Roseboro* Notice is normally issued by the Court *after* service of the summary judgment motion, directing that a response be filed within 21 days of the *Roseboro* Notice actually gives the *pro se* Plaintiff more time in which to file a response.

[7]Dkt. No. 176.

Plaintiff waited until May 30, 2014, to file a Memorandum in Opposition to Defendant's Motion for Summary Judgment, along with a Motion for Sufficient/Additional Time to Complete Plaintiff Memorandum in Opposition to Defendant [sic] Motion for Summary Judgment.[8] Defendant filed a response in opposition to Plaintiff's motion on June 6, 2014.[9] In his motion, Plaintiff claims that he did not receive Defendant's summary judgment motion until May 9, 2014; therefore, he argues, his response, filed on May 30, 2014, is timely per the 21-day directive in the *Roseboro* Notice. Plaintiff also insinuates that the United States Postal Service is investigating Defendant's claim that Plaintiff received the documents earlier than May 9, 2014. Plaintiff also requests that even if the Court finds that his response is untimely, he be granted an extension due to the unorthodox timing of the filings. In his response, Defendant urges the Court to deny Plaintiff's motion because FedEx tracking documents clearly show that Plaintiff received the summary judgment motion and memorandum in support on May 5, 2014, not May 9, 2014, as Plaintiff claims. Defendant also points out that even if Plaintiff received the documents late, he was aware from the Roseboro Notice that a response was due by May 23, 2014, and yet Plaintiff waited a full week after that date to raise the issue or request an extension. Defendant contends that Plaintiff has failed to show good cause to justify an extension of the filing deadline, and, therefore, Defendant urges the Court to strike Plaintiff's response.

The Court finds that Defendant mailed the summary judgment documents on May 2, 2014, and that Plaintiff received Defendant's summary judgment motion and memorandum in support on May 5, 2014, as is clearly evidenced by the FedEx tracking documents attached to Defendant's response. Local Rule of Civil Procedure 7.02(b) requires that responses to motions for summary

---

[8] Dkt. Nos. 179 & 180.

[9] Dkt. No. 181.

judgment be filed and served within 21 days from the date of service of the motion. Here, service was complete on May 2, 2014, when the documents were mailed. *See* Fed.R.Civ.P. 5(b)(2)(C). Thus, Plaintiff's response was due by May 26, 2014. *See* Fed.R.Civ.P. (6)(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a).").

Under Rule 6, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B). The undersigned agrees with Defendant that Plaintiff should have requested clarification or moved for an extension of time in which to file his response to Defendant's summary judgment motion, rather than waited until after the deadline to file a request for an enlargement of time. However, the undersigned also recognizes that the timing and order of Plaintiff's receipt of the summary judgment documents and this Court's *Roseboro* Notice proceeded in an unorthodox manner, which may have caused ambiguity with regard to Plaintiff's rights and responsibilities in the face of a dispositive motion. Ambiguity of this sort can give rise to excusable neglect in failing to act within a specified time. *See, e.g., Spear, Leeds & Kellogg v. Public Service Co. of New Hampshire*, S.D.N.Y.1988, 700 F.Supp. 791 (enlarging time within which the plaintiffs' could serve an amended complaint because ambiguity in the court's order regarding time of service created excusable neglect for one-day delay in service, particularly absent any showing of prejudice to defendants from delay).

Moreover, as a *pro se* plaintiff "confronted with the possibility of summary disposition of his case," *Roseboro*, 528 F.2d, at 310, Plaintiff is entitled to notice of his rights and responsibilities under the summary judgment rules that is "sufficiently understandable to one in [Plaintiff's] circumstances fairly to apprise him of what is required." *Id.* (quoting *Hudson v. Hardy*, 134

U.S.App.D.C. 44, 412 F.2d 1091, 1094 (1968)). Here, the unusual timing of Plaintiff's receipt of documents in this case may have affected the clarity of the notice that the *Roseboro* decision mandates must be understandable in order to be sufficient. Further, the Court notes that Plaintiff's minimal delay has caused Defendant little prejudice. Defendant has had access to Plaintiff's response brief for months, and he even filed a reply brief to Plaintiff's response on June 6, 2014.[10] Applying an abundance of caution and giving the *pro se* Plaintiff the full benefit of the doubt, the undersigned finds that, under these circumstances, it is not appropriate to strike Plaintiff's untimely response. Accordingly, Plaintiff's Motion for Additional Time to Complete Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 179) is **GRANTED**. The undersigned will consider Plaintiff's response in opposition to Defendant's summary judgment motion.

2. Plaintiff's Motion for Extension of Time to File Response/Reply (Doc. 183) , Plaintiff's Motion for Judicial Notice of Complaint to United States Postal Inspection Service (Doc. 184), & Plaintiff's Motion for Judicial Notice of Complaint to United States Postal Inspection Service (Doc. 185)

On Friday, June 6, 2014, Defendant electronically filed a Reply to Plaintiff's Response to Motion for Summary Judgment, along with several exhibits.[11] Because the documents were filed after business hours on a Friday, Defendant indicated in the attached Certificate of Service that a copy of the filing would be served on Plaintiff by depositing the documents with Federal Express on Monday, June 9, 2014. True to his word, on June 9, 2014, Defendant shipped the documents via FedEx, and Plaintiff received the documents on June 11, 2014.[12] The next day, June 12, 2014,

---

[10]Dkt. No. 182.

[11]Dkt. No. 182.

[12]Dkt. No. 187-1.

Plaintiff filed two motions relating to these documents–a Motion for Sufficient/Additional Time to Respond to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment[13] and a Motion for Judicial Notice of Complaint to Untied States Postal Inspection Service.[14] Thereafter, on June 19, 2014, Plaintiff filed another Motion for Judicial Notice of Complaint to United States Postal Inspection.[15] Although, at first glance, it appears that Plaintiff is claiming in these motions that he never received Defendant's summary judgment motion, Defendant's memorandum in support of his summary judgment motion, or Defendant's reply to Plaintiff's response, which is clearly not true as evidenced by Federal Express tracking records submitted by Defendant in response to Plaintiff's motions,[16] upon closer examination, it becomes clear that Plaintiff is operating under a misapprehension relating to courtesy copies of documents Defendant provided to the Court after they had been served on Plaintiff.

On May 5, 2014, as he has done numerous times throughout this, and related, litigation, Defendant's counsel sent courtesy copies of his Motion for Summary Judgment and Memorandum of Law in Support, along with the related exhibits, via U.S. Mail, to the undersigned and Judge Stamp, pursuant to the Attorney Filing Manual for the Northern District of West Virginia. Similarly, on June 9, 2014, Defendant hand delivered courtesy copies of his Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, along with the related exhibits, to the undersigned and Judge Stamp. Attached to each set of copies is a cover letter, which indicates that Defendant's counsel has also sent a courtesy copy of the cover letter to Plaintiff via Certified U.S. Mail, without

---

[13]Dkt. No. 183.

[14]Dkt. No. 184.

[15]Dkt. No. 185.

[16]Dkt. Nos. 187 & 188.

the other enclosures, *i.e.* the pleadings and related exhibits. Although it is clear from Plaintiff's own motions that he received the cover letters via Certified U.S. Mail, it appears that Plaintiff incorrectly believes that he was supposed to receive the documents listed in the body of the cover letter as well. As noted above, Plaintiff received those documents and the related exhibits via FedEx. Accordingly, Plaintiff's Motions for Judicial Notice of Complaint to United States Postal Inspection Service are **DENIED**. Additionally, Plaintiff's Motion for Sufficient/Additional Time to Complete Plaintiff's Memorandum in Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Objections to Defendant's Untimely Filings is **DENIED**, not only because it is factually inaccurate with regard to Plaintiff's non-receipt of documents, but also because Plaintiff does not have a right to file a sur-reply, so his motion requesting an extension of the time in which to file a sur-reply is a frivolous nullity.

3. Defendant's Motion for Summary Judgment (Doc. 172)

Under Federal Rule of Civil Procedure 56, the Court shall grant a motion for summary judgment if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Anderson*, 477 U.S. at 247-48. The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Id*. In making this determination, the court views all underlying facts and inferences in the light most favorable to the nonmoving party. *Id*. However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there

is a genuine issue for trial." *Id*. at 256. Thus, "pure speculation and unsupported assertions [will not] suffice to create a genuine issue of material fact; the nonmoving party, to defeat summary judgment, must come forward with affidavits, interrogatories, depositions, and or other admissible evidence demonstrating the existence of a genuine issue of material fact." *Blankenship v. Warren County Sheriff's Dept.*, 939 F.Supp.451, 456 (W.D.Va. 1996); *see also* Fed.R.Civ.P. 56(c). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Plaintiff's original complaint, brought pursuant to 42 U.S.C. § 1983, alleged various civil rights violations against numerous defendants.[17] However, this Court dismissed all of the claims against all of the defendants, except for one claim against this Defendant, which was based on an allegation in Count III of the complaint that Defendant, "in conspiracy with Defendant Gamble, leaked internal investigative forensic reports supplied in confidence to the West Virginia State police officer Weaver, to foster favor and provide advantage to eventually criminally indicted to affect the course of justice in favor of Defendant Keith C. Gamble, under color of law, and in violation of Plaintiff's Federal and state civil and constitutional rights and privileges named herein."[18] Although the Court allowed this claim against Defendant to move forward, despite the vagueness of the allegation, because of the deference due to a *pro se* Plaintiff, in order to prevail on this § 1983 claim, Plaintiff must show that Defendant, acting under color of state law, deprived him of "a right secured by the Constitution and laws of the United States." Although Plaintiff devotes a considerable portion of his opposition brief on the question of whether Defendant was acting under color of state law, there does not seem to be any dispute that Defendant was a state actor at all times relevant to the

---

[17]Dkt. No. 1.

[18]Dkt. No. 103, p. 14-16.

allegations in the complaint. The question then is whether Plaintiff can prove an underlying constitutional violation caused by Defendant's alleged leak of information. After thoroughly reviewing the record, and showing as much deference as possible to the *pro se* Plaintiff, it appears to the Court that Plaintiff is alleging that Defendant leaked a confidential document to Mr. Gamble in order to give Mr. Gamble leverage against Plaintiff in a pending civil suit ("the State Case") in which Mr. Gamble was named as a defendant, which violated Defendant's right to privacy and his right of access to the courts.

"The right to privacy consists of two inter-related strands; one protects an individual's interest in avoiding disclosure of personal matters (the confidentiality strand) and the other protects an individual's interest in making certain personal decisions free of government interference (the autonomy strand)." *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996). "In the context of government disclosure of personal matters, an individual's right to privacy is violated if: (1) the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure." *Id*. "The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990). Defendant contends that there is no genuine issue of material fact regarding whether Plaintiff had a legitimate expectation of privacy with respect to the allegedly leaked document because the information contained in the document is not confidential and because Plaintiff disclosed the same document to Mr. Gamble, and the public at large, long before Defendant allegedly disclosed the document to Mr. Gamble. The Court agrees.

As the deposition transcript attached to Defendant's motion shows, Plaintiff testified as follows regarding the identity of the document he alleges Defendant leaked to Mr. Gamble:

> Q. So as I understand it, your complaint about Trooper Weaver is that he gave the certified mail receipt on Page 22 and he gave, at least a

copy of it, to Mr. Gamble?

A. The original copy, yes.

Q. He gave a copy, the original copy, he gave it, being the certified mail receipt on Page 22, not the lower part of the document that includes–

A. No–No, not this.

Q. But he gave that to Mr. Gamble?

A. The green–The green copy.

Q. And you're saying you have the green copy?

A. We gave it to the state patrol.

Q. You gave the green copy to the state patrol?

A. Yes. Yes. It was included with–And we showed it to the Ohio County grand jury and that's what they indicted Mr. Gamble with, as part of the evidence that they indicted him with.

Q. When do you believe that Mr. Gam–When do you believe Mr. Gamble received the certified mail receipt?

A. It was three weeks after we presented it to the state patrol.

Q. And did it have–And that copy–

A. That had the markings all over it, like I said.

Q. And it was during your deposition, you said. Is that right?

A. Yes.

Q. Was that the only document that you're contending Trooper Weaver gave to Mr. Gamble?

A. That's the only one I saw.

Q. So that's the one–that is the document that you're talking about when you say he leaked it?

A. Yes.

Q. Is that right?

A. Yes.

(Doc. 172-1). The only information on this document, a copy of which is attached to Defendant's motion, is Greg Givens's name and address, which is also Dennis Givens's address, Dennis Given's name and allegedly forged signature, a stamped date of July 20, 2009, and a tracking number. On the bottom left of the document are the following hand-written words: "(Original Copy) Suspected Forged Document (Signatures) Suspect #1-7 Has Source Doc. (Same Office)." On the bottom-right of the document is a stamp reading, "Exhibit A." Despite testifying under oath that the only document Defendant allegedly leaked to Mr. Gamble was this relatively benign certified mail receipt, Plaintiff now asserts that Defendant leaked other documents containing confidential information. Plaintiff claims that he said as much during his deposition, but that Defendant's counsel twisted his words and confused him into saying the opposite of what he really meant. Additionally, Plaintiff contends that the transcript of his deposition testimony contains critical omissions such that he is quoted as saying the very opposite of what he really said. For example, Plaintiff claims that when Defendant's counsel asked him, "Was that the only document that you're contending Trooper Weaver gave to Mr. Gamble," Plaintiff did not answer, "That's the only one I saw," as the transcript shows. Instead, Plaintiff claims that he really answered: "That isn't the only one I saw," and that he was "referencing other documents with Plaintiff [sic] private information contained within it, i.e. SOCIAL SECURITY NUMBER(S), ETC.]." (emphasis in original). In an apparent attempt to "prove" these incredible allegations about the propriety of his deposition testimony and the credibility of Defendant's evidence, Plaintiff attached a copy of one page of Defendant's complaint report, which contains Plaintiff's social security number. Plaintiff's response abounds with other such examples of mistakes and omissions in Plaintiff's testimony.

The undersigned finds that Plaintiff's contentions with respect to his deposition testimony are meritless, not grounded in reality, bordering on outright perjury, and, above all, not sufficient to raise a genuine issue about whether the document Defendant allegedly gave Mr. Gamble contained confidential information. *See Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). As one court put it: "Questions of this general sort often arise in cases where the party resisting summary judgment can muster no competent evidence to avoid it, yet wants to get to a jury in the hopes that the jury will disbelieve the evidence that the summary judgment movant has adduced." *Wilson v. Clancy*, 747 F.Supp. 1154, 1158 (D.Md.1990); *see also see Scott v. Harris*, 550 U.S. 372, 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Simply put, "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984). The Court finds that the document Defendant is alleged to have leaked clearly does not contain the type of intimate and personal information for which there is a constitutionally protected right of privacy, such as financial or business information. *See Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir.1990) (differentiating between protected and non-protected types of information).

Moreover, even assuming the document contained confidential information, "[t]here is no invasion of privacy when the material disclosed was already known to the recipient."*Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996). Plaintiff "cannot claim that his privacy has been invaded when

allegedly private materials have been disclosed to those who already know the details of that material."*Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.). The evidence overwhelmingly shows that Mr. Gamble was intimately familiar with the details of Plaintiff's allegations against him with respect to the certified mail receipt, and that Mr. Gamble already had access to the information within the document, and the actual document itself, long before Plaintiff allegedly gave a copy of the document to Zimmerman, who then allegedly gave it to Defendant. Mr. Gamble was opposing counsel in Greg Givens's previous case in this Court–in fact, Plaintiff first alleged that Mr. Gamble forged his name to the certified mail receipt in that prior case.[19] By May 3, 2011, when Plaintiff filed his complaint with the state police regarding Mr. Gamble's alleged forgery, Mr. Gamble was a named defendant, and counsel for other named defendants, in several state cases brought by Plaintiff, Greg Givens, and Carol Pizzuto. The State Case filed by Plaintiff, alleged, *inter alia*, that Mr. Gamble forged Plaintiff's signature to the certified mail receipt at issue here. Plaintiff attached the same document, with the same handwritten markings, as an exhibit to his memorandum in opposition to Defendants' Joint Motion to Dismiss the State Case, on or about March 10, 2011,[20] which is about *two months before* Plaintiff allegedly gave any documents to the state police.[21]

---

[19] 5:08-cv-25, Dkt. No. 313, Transcript of Hearing held before Judge Kaull on May 20, 2010. Judge Kaull later sanctioned Greg Givens for "the particularly egregious behavior of...committ[ing] a fraud upon the Court." Dkt. No. 277, p. 13.

[20] Doc. 81-3, p.3, Doc. 172-2, p. 3-6.

[21] Plaintiff's deposition in the State Case, taken on July 22, 2011, the following exchange took place between Mr. Gamble and Plaintiff:

> Q. In Paragraph 2 of your Complaint that you have there in front of you, you state that on July 28 of '09 plaintiff discovered Defendant Gamble had access to and used plaintiff's good name to forge documents. Do you see that?
>
> A. Paragraph 2?
>
> Q. Paragraph 2. At the very beginning of the first page there.
>
> A. First page. 28th.

Q. Do you see that?

A. Yeah.

Q. What happened on July 28th of '09?

A. I'm trying to recall. 28th. Let's see. That was the 28th. Well, I think that's when I discovered that signature was the forgery.

Q. Okay. And when you say "that signature," are you referring to the certified green card?

A. Yes.

Q. And what I'll hand you–and this is a copy, and it's attached to your memo–Memorandum in Opposition to Defendant's Joint Motion to Dismiss, and I'll hand this to you. And tell me if that is the document that you claim is the forged document? Obviously, it's a copy.

A. Yeah, that's it.

Q. Okay, So–so I'm clear, the allegations asserted in Paragraph 4 are based off of this document that I'll refer to as–it's Exhibit A to–I don't know if it's Exhibit A. I'm assuming it's Exhibit 1, but it doesn't have an Exhibit sticker. But would you agree with me that this is–that this document says "Suspect No. 1-7 has source doc (same office)" there on the side; is that correct?

[The videographer pauses to change the tape.]

A. Well, I don't know. I didn't–I didn't write this.

Q. Do you know whose handwriting this is?

A. No, I don't.

Q. It's not your handwriting?

A. No, I suspect it's–I don't know. I suspect it's from whoever examined the document.

Q. This is attached to your pleading Mr. Givens so I don't know–I don't know whose–whose writing this is. I'm just trying to reference this is a–what appears to be a certified green–a copy of a certified greed card that is stamped dated July 20th of '09; is that correct?

A. Yeah.

Q. Okay. And there's some markings, and on the bottom right-hand corner there's Exhibit A; is that correct?

A. Yeah.

Q. Okay. Would you agree with me that this has been attached as an exhibit to

Plaintiff does not some forward with any evidence on this issue, but merely states in his response brief that "THERE WAS ONLY ONE "LEAFED" COPY ALIGNED WITH COMMUNICATION CODE FROM THE FORENSIC EXAMINER-NEVER FULLY RELEASED IN ANY PUBLIC DOCUMENTS OR FILE ONLY AFTER MR. GAMBLE HAD OBTAINED THIS FROM DEFENDANT WEAVER–DOCUMENT WAS KEPT IN CONFIDENCE WITH THE FORENSIC EXAMINER ONLY PRIOR TO THIS." (emphasis added). These unsupported, conclusory statements and allegations are simply not sufficient to overcome summary judgment. *Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 419-20 (E.D.N.Y. 2008) ("The non-movant must present more than a "scintilla of evidence," or "some metaphysical doubt as to the material facts," and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible.") (internal citations omitted).

      To sustain an access to the courts claim, Plaintiff must show that Defendant "engage[d] in pre-filing actions which effectively cover[ed]-up evidence and actually render[ed] any state court remedies ineffective." *Pollard v. Pollard*, 325 F. App'x 270, 272 (4th Cir. 2009). It is not enough for Plaintiff to "merely guess that a state court remedy will be ineffective because of a defendant's actions...[rather, he] must demonstrate that the defendants' actions foreclosed [him] from filing suit in state court or rendered ineffective any state court remedy [he] previously may have had." *Id*. Defendant contends that there is no evidence that his actions covered up evidence and rendered Plaintiff's state court remedies ineffective. Plaintiff does not come forward with any evidence on

---

      your Memo in Opposition to Defendants' Joint Motion to Dismiss?

      A. Yeah.

      Q. Okay. I'm just trying to make sure that we're talking about the same document here.

      A. Yeah.

Doc. 172-2, p. 3-6.

this issue, other than vague and unsupported allegations about being too scared to report crimes after his treatment by Defendant, and other law enforcement. The Court agrees that there is no genuine dispute about whether Defendant's actions foreclosed Plaintiff from filing suit in state court or rendered ineffective any state court remedy he previously may have had. In fact, the overwhelming evidence shows that Plaintiff, and his family, enjoyed so much access to the courts after Defendant's alleged leak to Mr. Gamble that they are now under pre-filing restrictions.

In sum, despite the wide latitude given by this Court and an ample opportunity to present some evidence in support of his vague allegations against Defendant, Plaintiff has not met his burden of showing that a genuine issue of fact exists such that this case should proceed any further to trial. The undersigned concludes, after a very careful and thorough review of the record, that this case is meritless and recommends that Defendant's Motion for Summary Judgement be **GRANTED**.

## III. CONCLUSION & RECOMMENDATION

Based on the foregoing:

(1) Plaintiff's Motion for Judicial Notice of Objections and Evidence in USDC Case Nos. 5:12-cv-149 and 5:12-cv-155 (Doc. 177) is **DENIED**.

(2) Plaintiff's Motion for Judicial Notice of Complaint to United States Postal Inspection Service (Doc. 184) is **DENIED**.

(3) Plaintiff's Motion for Judicial Notice of Complaint to United States Postal Inspection Service (Doc. 185) is **DENIED**.

(4) Plaintiff's Motion for Recusal (Doc. 178) is **DENIED.**

(5) Plaintiff's Motion for Additional Time to Complete Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 179) is **GRANTED**.

(6) Plaintiff's Motion for Extension of Time to File Response/Reply (Doc. 183) is **DENIED**.

(7) The undersigned recommends that Defendant's Motion for Summary Judgment (Doc. 172) be **GRANTED**.

Any party may, within fourteen [14] days of the filing of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to mail a copy of this Order to the *pro se*, certified mail return receipt requested, and any counsel of record, as applicable.

**IT IS SO ORDERED**

DATED: August 8, 2014 /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE